United States Court of Appeals,

Fifth Circuit.

No. 94-30256.

In The Matter of Irma J. WALKER, Debtor.

Irma J. WALKER, Appellee,

v.

The CADLE COMPANY, Appellant,

v.

Denise D. LINDSEY and Stan Svara d/b/a SKS Enterprises, Appellees.

May 9, 1995.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before KING, EMILIO M. GARZA and DeMOSS, Circuit Judges.

KING, Circuit Judge:

In this case, we are confronted with questions surrounding the scope of bankruptcy jurisdiction. Irma J. Walker filed an adversary proceeding in bankruptcy court against the Cadle Company alleging violations of the automatic stay provisions of the Bankruptcy Code. The Cadle Company, seeking contribution and indemnity for any damages assessed against it, initiated third-party actions against Stan Svara and an attorney retained by the Cadle Company, Denise Lindsey. Although the bankruptcy court determined that Lindsey could not be charged with any liability for violations of the automatic stay, it did find that the Cadle Company and Svara had violated the automatic stay, and it awarded Walker damages and attorney's fees. Both the Cadle Company and Svara appealed to the district court which affirmed the judgment against the Cadle Company and in favor of Walker. *See Walker v. Cadle Co. (In re Walker),* 168 B.R. 114 (E.D.La.1994). The district also found, however, that neither it nor the bankruptcy court had subject matter jurisdiction over the Cadle Company's claim for contribution and indemnity against Svara, and accordingly, it reversed the bankruptcy court's award against Svara. The Cadle Company now appeals. Finding no reversible error in the district court's decision, we affirm.

## I. BACKGROUND

In December of 1979, Walker purchased a mobile home from a Louisiana mobile home dealer. The purchase was financed and secured with a chattel mortgage in favor of Capital Bank & Trust Company. In 1990, the Cadle Company ("Cadle") bought the mortgage from the Federal Deposit Insurance Company, which acquired the mortgage when Capital Bank & Trust Company became insolvent.

The next year, Walker became delinquent in her payments on the mortgage, and Jeff Joseph, the Cadle account officer in charge of Walker's file, hired an attorney, Denise Lindsey, to pursue the debt. Eventually, Cadle sued Walker on the loan and received a default judgment against Walker for $11,810.74 plus interest, costs, and attorney's fees.

On July 26, 1991, Walker sought the protection of Chapter 7 of the Bankruptcy Code. Walker filed a B-2 schedule itemizing her personal property and estimating its value at just over $1000. Walker also signed a statement of intent, proclaiming that she would voluntarily surrender the trailer within forty-five days as required by 11 U.S.C. § 521(2)(b). In early August, Lindsey was notified of Walker's bankruptcy filings, and she in turn advised Joseph of Walker's bankruptcy. One week later, on August 12, 1991, Cadle filed a proof of claim (which was signed by Joseph) in the bankruptcy court for $14,421.88.

Around the same time, Joseph told a business associate, Stan Svara, that he might have a trailer available, and he gave Svara Walker's telephone number. Svara called Walker about the trailer, but Walker informed Svara that she had filed for bankruptcy and she told Svara to contact her attorney, Jonathan May, about the trailer. Svara then relayed his conversation with Walker back to Joseph, telling him to contact Svara when Joseph got "matters straight."

Near August 23, 1991, Lindsey sent May a voluntary release and surrender form which was to be executed at a creditor's meeting. When Lindsey arrived at that September 3 meeting, she found that the form had not been signed and that Walker's attorney, May, had passed away. Lindsey gave another copy of the release form to Walker's new attorney, James Moorman. Lindsey testified that Moorman advised her that he would look over the release and "have [Walker] sign it if everything

was in order." Additionally, Walker informed Lindsey that she was planning to give up the trailer, but would need until the end of the week to remove her property from the trailer. Walker, however, did not sign a voluntary release and surrender form.

Lindsey sent a letter to Joseph on September 4, 1991, informing Joseph that, "Mrs. Walker should be out of the trailer by Saturday, 9/7/91. She will surrender the trailer at any time after that, but I must confirm with her attorney at the end of this week." Five days later, the bankruptcy court granted the bankruptcy trustee's petition of disclaimer and abandonment of the trailer.

Sometime after the September 3 creditors' meeting, Cadle, through Joseph, began negotiating with Svara for the purchase of the trailer. On September 6, Joseph informed Svara that Walker would vacate the trailer over the next few days and instructed Svara to inspect the trailer to determine whether Svara would consider purchasing it. After Svara looked at the trailer, he reported to Joseph that the trailer was in poor condition. Moreover, Svara told Joseph that he did not think that Walker still lived in the trailer as the mobile home's door was open, animals were roaming around, and evidence of rodent and insect infestation was present.

After Svara described the condition of the trailer to Joseph, they agreed that Svara would purchase the trailer for $1,750. Later, on September 11, Joseph spoke to Lindsey about the trailer. Lindsey, however, did not give Joseph permission to sell the trailer, but informed Joseph that additional authorization from Walker's attorney was needed.[1]

Nevertheless, a few weeks later, on September 25, 1991. Joseph called Lindsey and informed her that he was selling the trailer and that he needed the Voluntary Surrender Form. Lindsey then sent another form to Walker's attorney. The next day, Cadle sold the mobile home to Svara's fiance, Joni Davis, and several days later, on September 30, 1991, Svara and some associates went to retrieve the trailer. Svara again found the trailer disheveled, but he and his men added to the mess by throwing Walker's personal property on the lot when they removed the mobile home.

---

[1]There is some dispute about what Lindsey told Joseph. In their brief, Cadle notes that "Lindsey informed [Joseph] during this conversation [that] Cadle has sufficient legal grounds to pick up the mobile home." The bankruptcy court disagreed. As the district court noted, "[t]he bankruptcy court found that Lindsey did not authorize the recovery of the trailer. Lindsey testified that she did not tell Joseph that Cadle could pick up the mobile home...."

Walker, meanwhile, had been hospitalized with pneumonia and heart failure for approximately two weeks after she filed for bankruptcy protection in August. After her release, Walker lived with her parents. On October 7, 1991, Walker returned to the mobile home park, finding the trailer gone and her personal property strewn about the lot. Evidently, because of exposure to the elements, none of the property could be salvaged.

Walker filed an adversary proceeding against Cadle for violating the automatic stay imposed by 11 U.S.C. § 362, seeking recovery for damage to her personal property. Cadle instituted a counter-claim seeking to revoke Walker's discharge from bankruptcy (which had been granted on May 18, 1992). Cadle alleged that the discharge should be revoked because of a discrepancy between the value of the property as stated in Walker's B-2 schedules and the value stated in her complaint. Walker amended her complaint to conform to her bankruptcy schedules. Cadle also brought a third-party demand against Lindsey and Svara, seeking contribution and/or indemnity for any damages assessed against Cadle.

After a trial on the merits in late October of 1992, the bankruptcy court issued findings of fact and conclusions of law. Specifically, the court found that Cadle and Svara had violated the automatic stay by selling the trailer and, in doing so, had caused $2000 of damage to Walker. The bankruptcy court also awarded Walker attorney's fees. On the other hand, the bankruptcy court found that, "Lindsey did not violate the automatic stay against the debtor's property as she did not take any action or control over the debtor's property[,] ... and [she] cannot be charged with any liability as the result of Cadle's violation of the automatic stay."

After the parties submitted additional materials, the bankruptcy court issued supplemental findings of fact and conclusions of law, and awarded Walker attorney's fees in the amount of $4800 and costs of $361.76. Following additional proceedings, the bankruptcy court found that Svara was fifty percent responsible for the amounts owed to Walker.

Svara and Cadle appealed to the district court. The district court found that Cadle had no cause of action against Svara under the Bankruptcy Code. Moreover, the district court determined that it (and the bankruptcy court) did not have subject matter jurisdiction over Cadle's third-party

claim, and accordingly, the court reversed the bankruptcy court's judgment against Svara. Additionally, the district court affirmed the bankruptcy court's finding that Cadle violated the automatic stay, as well as the bankruptcy court's computation of the amount of the fees, costs, and damages owed to Walker.

Cadle now appeals to this court, arguing that the district court erred in affirming the bankruptcy court's: finding that Cadle violated the automatic stay; determination that Walker proved that she was damaged; dismissal of the cause of action against Lindsey; computation the amount of costs, attorney's fees; and dismissal of Cadle's third-party complaint against Lindsey. Further, Cadle complains that the district court erred in concluding that Cadle did not have a cause of action against Svara under bankruptcy law and in holding that it lacked subject matter jurisdiction to hear and dispose of Cadle's third-party claim against Svara. We, however, disagree with all of Cadle's contentions.

## II. STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error, and we will reverse "only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been made." *Allison v. Roberts (In re Allison),* 960 F.2d 481, 483 (5th Cir.1992); *see also Henderson v. Belknap (In re Henderson),* 18 F.3d 1305, 1307 (5th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994); *Haber Oil Co. v. Swinehart (In re Haber Oil Co.),* 12 F.3d 426, 434 (5th Cir.1994). By contrast, we review issues of law de novo. *In re Henderson,* 18 F.3d at 1307; *In re Haber Oil Co.,* 12 F.3d at 426; *In re Allison,* 960 F.2d at 483.

## III. DISCUSSION

A. Bankruptcy Contribution Claim

Cadle argues that the district court erred in concluding that there was no cause of action for contribution under § 362 of the Bankruptcy Code. Additionally, Cadle contends that the bankruptcy court had jurisdiction over its third-party claim against Svara through federal question jurisdiction, apparently based on the notion that its contribution claim is based on federal law. More specifically, Cadle asserts that the entire case, including the third-party demand against Svara, revolved around

the application of 11 U.S.C. § 362. According to Cadle, "[i]f this third-party demand were brought as an independent indemnity action, it could be brought in federal court, as the primary issue to be determined would be whether a violation of § 362 occurred." Therefore, Cadle posits that the district court had federal question jurisdiction under 28 U.S.C. § 1331. Cadle's contention, however, is misplaced, as there is no contribution action in § 362 of the Bankruptcy Code.

The Supreme Court has concluded that "a right to contribution may arise in either of two ways: first, through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or, second, through the power of federal courts to fashion a federal common law of contribution." *Texas Indus. v. Radcliff Materials,* 451 U.S. 630, 638, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981).

There is no express right to contribution in § 362 of the Bankruptcy Code. *Wieboldt Stores, Inc. v. Schottenstein,* 111 B.R. 162, 167 (N.D.Ill.1990) ("Nowhere does the Bankruptcy Code expressly provide for a right to contribution."); *Barber v. Riverside Int'l Trucks, Inc. (In re Pearson Indus.),* 142 B.R. 831, 848 (Bankr.C.D.Ill.1992) (same); *see also* Edward M. Fox & James Gadsden, *Rights of Indemnification and Contribution among Persons Liable for Fraudulent Conveyances,* 23 Seton Hall L.Rev. 1600, 1602-03 ("[I]t is quite clear that no right of contribution exists under the Bankruptcy Code"). Thus, as the Supreme Court noted, if a right to contribution exists, "it must be by implication." *Texas Indus.,* 451 U.S. at 639, 101 S.Ct. at 2066. The Court instructs that in discerning such an implication by Congress "[o]ur focus ... is on the intent of Congress." *Id.* Moreover, we may divine congressional intent by looking at "the legislative history and other factors: e.g., the identity of the class for whose benefit the statute was enacted, the overall legislative scheme, and the traditional role of the states in providing relief." *Id.*

Cadle cites no legislative history indicating congressional intent to create a cause of action for contribution. On the other hand, the purpose of the automatic stay provisions are clear. As the legislative history of § 362 notes, the automatic stay is designed to protect debtors from creditors and creditors from each other. S.Rep. No. 989, 95th Cong., 2d Sess. 49-55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835-41 ("The automatic stay ... provides creditor protection.... The automatic

stay is one of the fundamental protections provided by the bankruptcy laws."); *see also Hunt v. Bankers Trust Co.,* 799 F.2d 1060, 1069 (5th Cir.1986) (discussing the goal of the automatic stay to prevent a "chaotic and uncontrolled scramble for the debtor's assets" (internal quotation omitted)); *In re Prairie Trunk Ry.,* 112 B.R. 924, 928 (Bankr.N.D.Ill.1990) (noting that "[t]he intent behind section 362 is principally to protect a debtor by giving him relief from creditors in accordance with the policy of the Bankruptcy Code of affording the debtor an effective fresh start."). There is nothing in the legislative history of § 362 or in the case law interpreting that history to indicate that § 362(h) is designed to protect creditors who ignore the automatic stay. *Cf. Wieboldt Stores,* 111 B.R. at 168 (noting, in the fraudulent conveyance context, that third-party plaintiffs "are not members of the class for whose benefit the Bankruptcy Code was enacted"). It is clear that here, as was evident for the petitioner in *Texas Industries,* Cadle "is a member of the class whose activities Congress intended to regulate for the protection and benefit of *an entirely distinct class.*" *Texas Indus.,* 451 U.S. at 639, 101 S.Ct. at 2066 (internal quotation omitted).

The combination of these two factors—the absence of legislative history mentioning contribution and the fact that § 362(h) was not enacted to protect violators of the automatic stay—indicates that Congress did not intend to create a cause of action for contribution in § 362 of the Bankruptcy Code. As the Supreme Court made clear in deciding whether the antitrust law included an implied cause of action for contribution, "[t]he absence of any reference to contribution in the legislative history or of any possibility that Congress was concerned with softening the blow on joint wrongdoers in this setting makes examination of other factors unnecessary." *Texas Indus.,* 451 U.S. at 639, 101 S.Ct. at 2066. We, as other courts examining this issue, agree, and, consequently, we find no implied right of contribution in the Bankruptcy Code. *See, e.g., Wieboldt Stores,* 111 B.R. at 168; *In re Pearson Indus.,* 142 B.R. at 848; *Neill v. Borreson (In re John Peterson Motors),* 56 B.R. 588, 591 n. 5 (Bankr.D.Minn.1986).

If, as in the instant case, a right to contribution is not affirmatively created by the statute, then such a right may exist only through federal common law. *Texas Indus.,* 451 U.S. at 640, 101 S.Ct. at 2066. We do not wantonly use our power to fashion common-law remedies, for the Supreme

Court has cautioned us to invoke the power of the "federal common law" only when either "a federal rule of decision is necessary to protect uniquely federal interests, [or] ... Congress has given the courts the power to develop substantive law." *Id.* (internal quotation and citations omitted). This grant of power is very narrow, and although bankruptcy might seem to be a "uniquely federal interest," the Court has stated that, "the existence of congressional authority under Art. I [does not] mean that federal courts are free to develop a common law to govern those areas until Congress acts." *Id.* at 641, 101 S.Ct. at 2067. Instead, the Court has declared that "absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or impairing our relations with foreign nations, and admiralty cases." *Id.* Simply put, bankruptcy is not an area where the courts have wide discretion to fashion new causes of action. As one lower court noted, "in enacting the Bankruptcy Code Congress created a comprehensive legislative program providing for no right to contribution." *Wieboldt Stores,* 111 B.R. at 168. The Supreme Court spoke similarly, noting that, "[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme." *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 97, 101 S.Ct. 1571, 1583-84, 67 L.Ed.2d 750 (1981). Accordingly, like the court in *Wieboldt Stores,* we "refuse[ ] to fashion a new remedy that might disturb this carefully considered legislative scheme." *Wieboldt Stores,* 111 B.R. at 168; *see also In re John Peterson,* 56 B.R. at 591 n. 5 (finding that third-party contribution claim was based in state law because federal common law did not provide for such a claim in Title 11); Fox & Gadsden, *supra,* at 1605 (concluding that "there is simply no basis on which a right of indemnification or contribution can be found under federal common law").

Cadle correctly notes that the Supreme Court recognized a cause of action for contribution under § 10-b of the Securities Exchange Act of 1934. *See Musick, Peeler & Garrett v. Employers Ins.,* --- U.S. ----, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993). That case, however, is readily distinguishable from the case at bar. First, in *Employers Insurance,* the Court noted that because the

"private right of action under Rule 10b-5 was implied by the judiciary[,] ... [t]he federal courts have accepted and exercised the principal responsibility for the continuing elaboration of the scope of the 10b-5 right and the definition of the duties it imposes." *Id.* at ----, 113 S.Ct. at 2089. The Court also mentioned that its power to shape the contours of the 10b-5 cause of action was reinforced by "obvious legislative consideration" of that power in federal legislation. *Id.* Thus, the Court in *Employers Insurance* found that Congress had implicitly given courts the ability to develop 10b-5 law. That is not the situation under the automatic stay provisions; the remedies under 362(h) are not judicially created, and Cadle cites nothing to indicate congressional intent for courts to develop the cause of action for violations of the automatic stay.[2]

Second, in *Employers Insurance,* the Court was persuaded by the existence of a right of contribution in parallel securities actions. Specifically, the Court found that "these explicit provisions for contribution are an important, not an inconsequential, feature of the federal securities law and that consistency requires us to adopt a like contribution rule for the right of action existing under Rule 10b-5." *Id.* at ----, 113 S.Ct. at 2091. In the instant case, however, Cadle cites no bankruptcy provisions recognizing a third-party right of contribution. Accordingly, *Employers Insurance* does not support the creation of a cause of action for contribution under § 362 of the Bankruptcy Code.

B. Bankruptcy Jurisdiction

Cadle next argues that the district court erred in failing to recognize bankruptcy jurisdiction over its third-party claim against Svara. This contention, however, is misplaced. Jurisdiction for bankruptcy cases is rooted in the provisions of 28 U.S.C. § 1334. *See Celotex Corp. v. Edwards,* No.

---

[2]Cadle cites several cases for the proposition that "[s]everal courts recognized well in advance of the 1984 enactment [of § 362(h) ] a private right of action for individuals injured by a stay violation." These cases, however, do not recognize a private right of action for violations of the automatic stay. Instead, in the cases cited by Cadle, the debtors sought damages from the courts through civil contempt proceedings, not through a judicially created cause of action. *See, e.g., Miller v. Savings Bank (In re Miller),* 22 B.R. 479, 480 (D.Md.1982) (affirming bankruptcy court's finding of contempt and awarding damages); *Walters v. Hatcher (In re Walters),* 41 B.R. 511, 513, 516 (W.D.Mo.1984) (describing the civil contempt award); *DePoy v. Kipp (In re DePoy),* 29 B.R. 471, 478-80 (Bankr.N.D.Ind.1983) (noting that the damages awarded were in conjunction with civil contempt); *Cusanno v. Fidelity Bank (In re Cusanno),* 17 B.R. 879, 882 (Bankr.E.D.Pa.1982) (awarding damages for violation of the automatic stay and noting that "[s]uch action will not be sanctioned by *this court* " (emphasis added)).

93-1504, 1995 WL 227817, at *4, --- U.S. ----, ----, --- S.Ct. ----, ----, --- L.Ed.2d ---- (U.S. Apr. 19, 1995) (stating that "[t]he jurisdiction of the bankruptcy courts ... is grounded in and limited by statute"); *FDIC v. Majestic Energy Corp. (In re Majestic Energy Corp.),* 835 F.2d 87, 90 (5th Cir.1988) (noting that "whether federal jurisdiction over bankruptcy cases and proceedings exists is determined under § 1334(b)"); *Wood v. Wood (In re Wood),* 825 F.2d 90, 92 (5th Cir.1987) (describing § 1334 as the "starting point" for analyzing federal court's subject matter jurisdiction over bankruptcy claims); *see also* S.Rep. No. 989, 95th Cong., 2d Sess. 153-54 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5939-41 (discussing how the Bankruptcy Reform Act of 1978 amended § 1334's provisions "relating to the jurisdiction of the U.S. district courts over bankruptcy proceedings"); H.R.Rep. No. 595, 95th Cong., 2d Sess. 48-52 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6010-13 (same). Section 1334 provides that, with one exception, "the district court shall have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). The exception, stated in subsection (b) of § 1334, explains that "[n]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

Through this section, district courts, along with their bankruptcy units, are empowered to hear "cases under title 11" (i.e. the bankruptcy petition itself). *Celotex,* No. 93-1504, 1995 WL 227817, at *4, --- U.S. at ----, --- S.Ct. at ----; *Querner v. Querner (In re Querner),* 7 F.3d 1199, 1201 (5th Cir.1993); *In re Wood,* 825 F.2d at 92; *see also* S.Rep. No. 989, 153-54, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5939-41. Additionally, § 1334(b) gives the district courts original, but not exclusive, jurisdiction over "proceedings arising under title 11"; "proceedings "arising in' a case under title 11"; and "proceedings "related to' a case under title 11." *In re Wood,* 825 F.2d at 92; *accord Celotex,* No. 93-1504, 1995 WL 227817, at *4, --- U.S. at ----, --- S.Ct. at ----; *In re Querner,* 7 F.3d at 1199. As the Supreme Court recently announced, § 1334(b) gives bankruptcy courts jurisdiction over "more than the simply proceedings involving the property of the estate, [but] a bankruptcy court's "related to' jurisdiction is not limitless." *Celotex,* No. 93-1504, 1995 WL 227817,

at *4, --- U.S. at ----, --- S.Ct. at ----.

In determining the scope of the jurisdictional provisions of § 1334(b), we have noted that it is not necessary to distinguish their meanings because they "operate conjunctively to define the scope of jurisdiction." *In re Wood,* 825 F.2d at 93; *accord In re Majestic Energy Corp.,* 835 F.2d at 90; *see also Celotex,* No. 93-1504, 1995 WL 227817, at *4, --- U.S. at ----, --- S.Ct. at ---- (noting the Supreme Court's agreement with the conclusion in *Pacor* that, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." (internal quotations omitted)). Instead, to ascertain whether jurisdiction exists, "it is necessary only to determine whether a matter is at least "related to' the bankruptcy.' " *In re Wood,* 825 F.2d at 93. Although the Bankruptcy Code does not define "related matters," in *In re Wood,* we adopted the Third Circuit's formulation, and we determined that a matter is related for § 1334 purposes when " "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.' " *Id.* (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). As we later more specifically stated, " "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.' " *In re Majestic Energy Corp.,* 835 F.2d at 90 (quoting *Pacor,* 743 F.2d at 994) (alteration in original). Conversely, "bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." *Celotex,* No. 93-1504, 1995 WL 227817, at *4 n. 6, --- U.S. at ---- n. 6, --- S.Ct. at ---- n. 6.

As several courts have observed, "a vast majority of cases find that "related to' jurisdiction is lacking in connection with third-party complaints." *Official Committee of Unsecured Creditors ex rel. Summit Airlines v. Ganz (In re Summit Airlines),* 160 B.R. 911, 922 (Bankr.E.D.Pa.1993) (listing cases); *accord In re Schwamb,* 169 B.R. 601, 604 (E.D.La.1994), *aff'd,* No. 94-30427, 48 F.3d 530, 1995 U.S.App. LEXIS 4456 (5th Cir.1995). This too is such a case. Even under the broadest meaning of the term, Cadle's third-party claim against Svara does not "relate to" the bankruptcy claim so as to confer bankruptcy jurisdiction.

In the instant case, Cadle's claim against Svara has no "conceivable effect on the administration of the estate" nor would the outcome of that claim "alter the debtor's rights, liabilities, options, or freedom of action." Cadle's third-party action against Svara claimed that Svara, and not Cadle, was responsible for any damage to Walker's property. It is difficult to imagine that whether Svara should be required to reimburse Cadle for any money Cadle pays to Walker could somehow affect the estate. *See Official Creditors' Comm. v. International Ins. Co. (In re Pettibone),* 135 B.R. 847 (Bankr.N.D.Ill.1992) (finding cross-claim which would "merely determine which party will ultimately be responsible in the event that [the first-party defendant] is found liable in the underlying [a]dversary actions," was not "related to" bankruptcy action under § 1334).

Cadle's claim that § 157 of the Code gave the bankruptcy court jurisdiction over its claim against Svara is also incorrect. Section 157 does not give bankruptcy courts power beyond that granted in 28 U.S.C. § 1334; rather, § 157 allows district courts to assign cases to the bankruptcy courts.[3] *See* 3 David G. Epstein et al., *Bankruptcy* § 12-1 (1992) (describing the operation of § 157 and noting that in enacting that provision "Congress was saying the district court had jurisdiction, but that the district court in one way or another could delegate some parts of this to the bankruptcy judges." (footnote omitted)). Specifically, § 157 describes the bankruptcy court's power in various types of cases. Under this section, a bankruptcy judge may decide " 'all core proceedings arising under title 11, or arising in a case under title 11' and ... enter appropriate orders and judgments."[4] *In re Wood,* 825 F.2d at 95 (quoting 28 U.S.C. § 157(b)(1)); *see also Citizens Bank & Trust v. Case (In re Case),* 937 F.2d 1014, 1019 (5th Cir.1991). For "non-core proceedings" otherwise related to a case under title 11, a bankruptcy judge may only "submit findings of fact and conclusions of law to

[3]The section states, in part, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

[4]Subsection (b)(1) provides that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 ... and may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1).

the district court, subject to de novo review."[5] *In re Wood,* 825 F.2d at 95; *accord In re Case,* 937 F.2d at 1019. Thus, while § 157 gives bankruptcy courts the power to hear some cases, and the power to decide certain cases, it does not give those courts the power to hear cases that the district court could not hear. As noted above, there was no federal jurisdiction over Cadle's third-party claim, and accordingly, the district court did not err in refusing to find that the bankruptcy court had jurisdiction over that claim through § 157.

C. Supplemental Jurisdiction

Cadle further asserts that the bankruptcy court had jurisdiction to hear the third-party claim against Svara under the principle of supplemental jurisdiction. Cadle argues that, "when the jurisdiction granted the district court under § 1334 [conferring bankruptcy jurisdiction] is combined with the grant of § 1367 [supplemental jurisdiction], there can be no doubt about the capacity of the bankruptcy court to hear the third-party demand."[6] Notably, Cadle does not assert that the district court should have exercised its supplemental jurisdiction to hear its third party claim against Svara. Accordingly, we do not address the difficult question of whether a *district court* may address claims that are supplemental to its bankruptcy jurisdiction. *See generally* Susan Block-Lieb, *The Case Against Supplemental Jurisdiction: A Constitutional, Statutory, and Policy Analysis,* 62 Fordham

---

[5]Section 157 states:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final offer or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

> 28 U.S.C. § 157(c)(1). If the parties consent, however, the district court may grant the bankruptcy court power to hear noncore, but related, proceedings. *See* 28 U.S.C. 157(c)(2) (stating that "the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate judgments....").

[6]We construe Cadle's argument to mean that even if no cause of action for contribution or indemnity exists in the Bankruptcy Code, the district court erred in finding that the bankruptcy court could not hear Cadle's state law third-party claim under its supplemental jurisdiction. We express no view on whether Louisiana law recognizes such a claim.

L.Rev. 721 (1994) (discussing arguments against district court's exercising jurisdiction supplemental to their bankruptcy jurisdiction and describing cases). Nevertheless, even assuming, *arguendo,* that a district court could reach a third-part y claim under its supplemental jurisdiction, we find that a bankruptcy court does not have supplemental jurisdiction to reach such claims.

Several bankruptcy courts have concluded that they had jurisdiction supplemental to their bankruptcy jurisdiction. For example, the court in *In re Eads* determined that it had supplemental jurisdiction. *See Hawkins v. Eads (In re Eads),* 135 B.R. 387 (Bankr.E.D.Cal.1991). In *In re Eads,* the bankruptcy court concluded, without much analysis on the interaction between § 157 and § 1334, that " "the supplemental jurisdiction statute applies in bankruptcy adversary proceedings and, subject to the court's discretion to decline to exercise such jurisdiction, permits defendants to assert third-party claims on theories of ancillary and pendent jurisdiction, which are components of supplemental jurisdiction.' " *Id.* at 390. Aft er conducting a traditional supplemental jurisdiction analysis, the court found that there was a "close logical and factual nexus between the pendent claim and the impleader claims," and held that there was pendent jurisdiction over a state-law fraud claim. *Id.* at 397. The court, however, specifically limited its finding, stating that its determination of supplemental jurisdiction was "*limited to a statement of the subject-matter jurisdiction of the district court,* of which the bankruptcy court is a unit, over third-party claims. It does not address whether a bankruptcy judge may preside over the trial." *Id.* at 390 (emphasis added).

Other bankruptcy courts, however, have gone further. In *Jones v. Woody (In re W.J. Servs., Inc.),* 139 B.R. 824, 826 (Bankr.S.D.Tex.1992), the court noted that under § 1367, district courts could exercise jurisdiction over "claims that involve the joinder or intervention of additional parties" and observed that "[p]ursuant to 28 U.S.C. § 151, the bankruptcy court is a unit of the district court." Thus, the court concluded that, "[u]nder 28 U.S.C. § 1367(a), the bankruptcy court has supplemental jurisdiction over claims that form the same case or controversy." *In re W.J. Servs.,* 139 B.R. at 826; *cf. National Westminster Bankcorp v. ICS Cybernetics, Inc. (In re ICS Cybernetics),* 123 B.R. 467, 472-73 (Bankr.N.D.N.Y.1989) (finding, in a pre-section 1367 case, that a bankruptcy court had ancillary jurisdiction over compulsory counter-claims that the court also found to be core

proceedings), *aff'd,* 123 B.R. 480 (N.D.N.Y.1990). In light of the Supreme Court admonishments in *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) and our reading of the statutes we find the bankruptcy courts' reasoning unpersuasive, and we conclude that bankruptcy courts may not exercise supplemental jurisdiction.

The Supreme Court discussed the limitations of supplemental and pendent jurisdiction in *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). In that case, the Court noted that:

> It remains rudimentary law that as regards all courts of the United States inferior to this tribunal, two things are necessary to create jurisdiction.... The Constitution must have given to the court the capacity to take it, *and an act of Congress must have supplied it....* To the extent that such action is not taken, the power lies dormant.

*Finley,* 490 U.S. at 547-48, 109 S.Ct. at 2006 (internal quotation omitted). Applying this rule to pendent-party jurisdiction, the Court stated "we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly." *Id.* at 549, 109 S.Ct. at 2007.

In interpreting the Supreme Court's decision, we noted that "pendent-party jurisdiction does not exist, unless Congress has expressly spoken to allow it. Accordingly, this Court along with others, has read *Finley* as sounding the death knell for pendent-party jurisdiction." *Sarmiento v. Texas Bd. of Veterinary Medical Examiners,* 939 F.2d 1242, 1247 (5th Cir.1991); *see also Iron Workers Mid-South Pension Fund v. Terotechnology,* 891 F.2d 548, 551 (5th Cir.) ("The Supreme Court held in *Finley* that while pend[e]nt-party jurisdiction may pass constitutional muster, it has not been congressionally authorized."), *cert. denied,* 497 U.S. 1024, 110 S.Ct. 3272, 111 L.Ed.2d 782 (1990).

Much of the force of the *Finley* decision was lost with Congress's actions in the Judicial Improvements Act of 1990, 104 Stat. 5089, 5113. In that Act, Congress stated that:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. 1367(a). By virtue of this Act, Congress conferred a broad grant of jurisdiction upon the district courts, indicating a congressional desire that, "supplemental jurisdiction at least in the first instance ... go to the constitutional limit, to which it appeared to be carried in ... [*United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ]."[7] *Rodriguez v. Pacificare of Texas,* 980 F.2d 1014 (5th Cir.) (quoting David D. Seigel, *Commentary on 1990 Revision,* 28 U.S.C.A. § 1367, at 831 (1993)), *cert. denied,* --- U.S. ----, 113 S.Ct. 2456, 124 L.Ed.2d 671 (1993); *see also* Charles Alan Wright et al., 13B *Federal Practice and Procedure* § 3567.2 (2d ed. Supp.1994) (describing the teachings of *Finley* as, "for the most part, a matter of unhappy history," and noting that under § 1367 supplemental "jurisdiction extends to the limits of Article III").

While § 1367 addressed the power of the *district courts* to exercise supplemental jurisdiction, it did not discuss the power of the bankruptcy courts to reach pendent parties. As noted above, *Finley* requires courts not to "assume that the full constitutional power has been congressionally authorized," and not to "read jurisdictional statutes broadly." *Finley,* 490 U.S. at 549, 109 S.Ct. at 2007. Because there is no Congressional statute conferring upon the *bankruptcy courts* the power to exercise supplemental jurisdiction, we find no error in the district court's conclusion that the bankruptcy court did not have the power to hear Cadle's contribution claim against Svara. *See Fisher v. Federal Nat'l Mortgage Ass'n (In re Fisher),* 151 B.R. 895, 898-99 (Bankr.N.D.Ill.1993) (noting that § 1367 "confers authority only upon the district court").

The district and circuit court case law in this area, although sparse, is not inapposite. In the only circuit court decision found that discussed jurisdiction supplemental to bankruptcy jurisdiction, the Second Circuit concluded that the operation of § 1334(b)'s bankruptcy jurisdiction and § 1367's supplemental jurisdiction gave the *district court* power to approve a settlement "forming part of the

---

[7]Under *Gibbs,* "state claims against a defendant in a federal forum could be adjudicated if they were appended to a federal claim against that defendant, and derived from the same nucleus of operative facts." *Rodriguez v. Pacificare of Texas,* 980 F.2d 1014, 1019 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 2456, 124 L.Ed.2d 671 (1993). From this reasoning, known as pendent claim jurisdiction, pendent party jurisdiction developed. Through pendent party jurisdiction, federal courts exercised jurisdiction over state law claims involving non-diverse defendants as long as the factual basis of the state law claim was sufficiently intertwined with the federal claim. *Id.; see generally* Charles Alan Wright et al., 13B *Federal Practice and Procedure* § 3567.2 (2d ed. Supp.1994).

same case before it."[8] *Publicker Indus. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 114-15 (2d Cir.1992) (emphasis added).  In that case, the court did not imply that a bankruptcy court had the same power.

Similarly, in the only district court decision recognizing supplemental jurisdiction, the court invoked ancillary jurisdiction to hear a contribution claim that it determined to be "logically entwined" to the bankruptcy trustee's fraudulent conveyance claims.  *Wieboldt Stores, Inc. v. Schottenstein,* 111 B.R. 162, 166 (N.D.Ill.1990).  In reaching its conclusion, the court noted that it "ha[d] not found any legal authority supporting the notion that the bankruptcy jurisdiction statute limits *this court's* otherwise legitimate exercise of ancillary jurisdiction." *Id.* at 167.  *But cf. Southtrust Bank v. Alpha Steel Co. (In re Alpha Steel Co.),* 142 B.R. 465, 471 (M.D.Ala.1992) (intimating that bankruptcy courts lacked supplemental jurisdiction).  Notably, however, the court in *Wieboldt,* just as the court in *In re Cuyahoga Equipment Corp.,* did not indicate that the *bankruptcy court* had the power to exercise supplemental jurisdiction.

Examination of the bankruptcy jurisdiction statute itself also counsels against extending supplemental jurisdiction to the bankruptcy courts.  As several courts have commented, "[t]here are ... strong ... arguments to support the position that the "relate to' and "arising in' jurisdictional components of § 1334(b) already allow bankruptcy courts to hear, to the extent Congress intended, all supplemental claims that have a logical relationship to an underlying bankruptcy proceeding." *Wilcox v. Houghton (In re Houghton),* 164 B.R. 146, 148 (Bankr.W.D.Wash.1994) (quoting *In re Alpha Steel Co.,* 142 B.R. at 471); *accord In re Fisher,* 151 B.R. at 899.

Analysis of the statutory language empowering district courts to refer certain cases to the bankruptcy courts yields a similar result.  As described above, 28 U.S.C. § 157 governs the types of cases that a district court may refer to a bankruptcy court, stating in part that, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or

---

[8]The Second Circuit did not rest on § 1367 alone, noting that "[t]he district court did not need to rely solely on its supplemental jurisdiction to approve the settlement, because additional authority arises from CERCLA's jurisdictional grant...." *Publicker Indus. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 115 (2d Cir.1992).

arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Additionally, § 157 distinguishes core and non-core cases, providing that bankruptcy courts may "hear and determine" core cases, but noting that bankruptcy courts may only submit findings of fact and conclusions of law to the district court in non-core cases. *See* 28 U.S.C. § 157(b), (c). Absent from this grant of jurisdiction is any indication that district courts may refer to bankruptcy courts any cases that were before the district courts only on the basis of supplemental jurisdiction. As one commentator describes:

> [Section] 157(c)(1) speaks only of "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." It is silent with regard to the power of a bankruptcy court to "hear" or "determine" a supplemental claim—a proceeding that is neither core nor related to the title 11 case.

Block-Lieb, *supra,* at 810 (footnote omitted). Simply put, even assuming that a district court could exercise jurisdiction supplemental to its bankruptcy jurisdiction described in 28 U.S.C. § 1334, there is nothing in the jurisdictional statutes to indicate that the district court could refer such a case to a bankruptcy court.

Congress has gone to great lengths to determine what proceedings may be tried by bankruptcy courts, and "the exercise of ancillary and pendent jurisdiction by bankruptcy courts could subsume the more restrictive "relate to' and "arising in' jurisdiction, such that the latter would be rendered substantially, if not entirely, superfluous." *In re Alpha Steel, Inc.,* 142 B.R. at 471; *accord In re Houghton,* 164 B.R. at 148. Thus, it would be somewhat incongruous to gut this careful system by allowing bankruptcy courts to exercise supplemental jurisdiction to pull into bankruptcy courts matters Congress excluded in its specific jurisdictional grants. *See In re Houghton,* 164 B.R. at 148; *In re Fisher,* 151 B.R. at 899; *In re Alpha Steel, Inc.,* 142 B.R. at 471.

Additionally, even if supplemental jurisdiction were thought to "supplement[ ] rather than supplant[ ] "related to' and "arising in' jurisdiction, a bankruptcy court exercising the former could hear claims which in effect, merely relate to claims which themselves have only a relate-to connection with the primary case." *In re Alpha Steel, Inc.,* 142 B.R. at 471 (internal quotation omitted). It seems unlikely that Congress would have intended such a result, especially after carefully delimiting bankruptcy jurisdiction in § 157. Moreover, as noted above, such a result would contravene the

Supreme Court's directive in *Finley* instructing courts not to "read jurisdictional statutes broadly."

*Finley,* 490 U.S. at 549, 109 S.Ct. at 2007. Thus, we find that the district court correctly concluded

that the bankruptcy court could not exercise supplemental jurisdiction over Cadle's third-party claim.

D. Other Claims

Cadle's remaining claims are merit less. In short, based on our review of the record in this

case, we find that the bankruptcy court did not err in concluding that Cadle violated the automatic

stay, in finding that Cadle was responsible for the damages to Walker, or in determining the amount

of damages and costs that Walker is entitled to receive.[9]

IV. CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.

---

[9]Although not expressly addressed by the district court, we find that it implicitly affirmed the district court's dismissal of the cause of action against Lindsey. We find no error in this conclusion.