Arthur M. HALVAJIAN, Plaintiff,

v.

The BANK OF NEW YORK, N.A., Robert DeBello, Shapiro & Shapiro (as Escrow Agent of a certain Mortgage Note in the amount of $450,000) and Edward R. Evans, Esq. (an Escrow Agent of approximately $18,000.00), Defendants.

Civil Action No. 95–5761 (JCL).

United States District Court,
D. New Jersey.

Dec. 15, 1995.

Leo L. Leyva, Cole, Scholtz, Meisel Forman & Leonard, Hackensack, NJ, for Plaintiff.

David Own Marcus, Shapiro & Croland, Hackensack, NJ, for Defendants.

## MEMORANDUM AND ORDER

LIFLAND, District Judge.

Defendant The Bank of New York, N.A. ("BNY") asks this Court to withdraw the reference to the bankruptcy court of an adversary proceeding filed by Arthur M. Halvajian. BNY also moves for leave to file an Amended Answer and Third–Party Complaint naming Nelson Engineering, Inc. ("Nelson") as defendant. Halvajian opposes both motions. For the reasons discussed below, the Court denies BNY's motions.

### Background

On October 25, 1991, the New Jersey Superior Court awarded BNY a Judgment of $2,267,075.43 against Group XXXV partnership ("Group") because of default on a loan from National Community Bank of New Jersey, the predecessor of BNY. Halvajian, a general partner of Group, guaranteed the loan, which was secured by a mortgage on 14.23 acres of vacant property owned by the partnership and located at Route 35 and Deal Road in Ocean Township ("the property").

On July 28, 1993, BNY, Group, Halvajian, and others executed a Settlement Agreement providing *inter alia* that Halvajian would convey to BNY a deed in lieu of foreclosure of the property, and consent to entry of an order that charged his interest in certain other partnerships with a lien of the Judgment.[1] Group and Halvajian eventually defaulted under the agreement, prompting BNY to begin efforts to collect the balance of the Judgment. In response Halvajian moved for, and was granted by the Superior Court, an order allowing him a credit against his judgment-indebtedness equal to the fair mar-

---

1. Pursuant to the terms of the Settlement Agreement, on August 5, 1993, the Superior Court entered an Order charging Halvajian's partnership interests with a lien of the Judgment.

ket value of the property deeded to BNY as part of the Settlement Agreement.

On April 24, 1995, before the Superior Court conducted a hearing on the credit to which Halvajian was entitled, Halvajian filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Twelve days later he filed an adversary proceeding in bankruptcy court against BNY and other defendants, seeking various forms of relief including: 1) a turn over of estate assets pursuant to 11 U.S.C. §§ 541 and 542; 2) an order enjoining and restraining BNY and other defendants from distributing any payments, proceeds, income and/or dividends of any nature to BNY attributable to BNY's pre-petition writ of execution; 3) an accounting from BNY for all monies paid to and/or received by BNY on account of the Judgment entered against Group and Halvajian; 4) an order compelling BNY to prove the extent of and validity of certain lien claims, if any, on Halvajian partnership interests entered pursuant to the August 5, 1993 Order charging partnership interests with a lien of the Judgment; and 5) an immediate hearing to determine the fair market value of the property deeded to BNY as part of the July 23, 1993 Settlement Agreement.

The dispute concerning the value of the property derives from its hybrid composition as wetlands and uplands. The fair market value is a function of the number of upland, i.e. developable acres, within the 14.23 acre tract. BNY retained proposed third-party defendant Nelson to perform the wetlands delineation and to obtain the necessary New Jersey Department of Environmental Protection Letter of Interpretation ("LOI") confirming the delineation. Nelson estimated, and the state eventually confirmed by LOI, that 5.57 acres of the 14.23 acre tract constituted developable uplands. BNY marketed the property based on this delineation and ultimately sold it to Ocean Township for $500,000 in April 1995.

Halvajian contends that Nelson negligently completed the delineation, causing it to un-derdetermine the amount of valuable uplands.[2] According to T & M Associates, Halvajian's environmental expert, absent the professional negligence of Nelson, BNY could have obtained a LOI from the state confirming that the property comprised 10 developable acres. Based on this opinion, Halvajian argues that he is entitled to a larger credit against the Judgment lien.

### Discussion

■ "[F]or cause shown", a district court may withdraw all or part of a case referred to the bankruptcy court. 28 U.S.C. § 157(d). Although the statute does not enumerate what constitutes "cause", courts have considered such factors as "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *In re Pruitt,* 910 F.2d 1160, 1168 (3d Cir.1990) (quoting *Holland America Ins. Co. v. Succession of Roy,* 777 F.2d 992, 999 (5th Cir.1985)).

BNY proffers two reasons why cause exists to withdraw the reference to the bankruptcy court. The first argument focuses on the possible jurisdictional limitations that stem from the bankruptcy court's status as an Article I court.

BNY wishes to proceed against Nelson for indemnification should Nelson's professional negligence and/or breach of contract entitle Halvajian to an enhanced credit against BNY's Judgment lien.[3] Such an action, BNY contends, derives from the same "nucleus of operative fact" as Halvajian's adversarial proceeding against BNY, *see United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), since the relevant documents, events, and conduct are identical whether the plaintiff is BNY or Halvajian. The linchpin of the argument is BNY's contention that a bankruptcy court cannot statutorily or constitutionally exercise supplemental jurisdiction over BNY's state-law claim against Nelson. *See* 28 U.S.C.

---

**2.** Nelson allegedly ignored documents in its file that would have supported a wetlands delineation much more favorable to Halvajian.

**3.** BNY's proposed Third–Party Complaint seeks damages for Nelson's alleged malpractice, breach of contract and non-disclosure of material information.

§ 1367(a) (supplemental jurisdiction statute codifying ancillary and pendent jurisdiction doctrines). Absent withdrawal, BNY suggests, it must litigate the same events in two forums, wasting party and judicial resources alike.

The second prong of BNY's "cause" argument is that failure to withdraw the petition may deprive it of a forum altogether since it risks preclusion by New Jersey's "entire controversy doctrine", which requires a litigant to join in a pending action all claims that arise out of the litigated transactions. *See Cogdell by Cogdell v. Hospital Center at Orange,* 116 N.J. 7, 560 A.2d 1169 (1989); *West Jersey Health System v. Croneberger,* 275 N.J.Super. 303, 645 A.2d 1282 (App.Div. 1994) ("entire controversy doctrine" could preclude subsequent action if, in first action, defendant failed to file a third-party complaint against the defendant in the second action).

Whether a bankruptcy court has authority to exercise supplemental jurisdiction is a question that has generated divergent answers. Until quite recently, "[c]ourts of appeal, district courts, and bankruptcy courts have nearly uniformly concluded that there exists jurisdiction supplemental to bankruptcy jurisdiction." Susan Block–Lieb, "The Case Against Supplemental Jurisdiction: A Constitutional, Statutory, and Policy Analysis", 62 *Fordham L.Rev.* 721, 729 (1994). *See, e.g., In re South Bay Medical Associates,* 184 B.R. 963, 969 (Bankr.C.D.Cal.1995) (citing cases); *In re Direct Satellite Commu-*

*nications, Inc.,* 91 B.R. 5 (Bankr.W.D.Pa. 1988). *See also In re Cuyahoga Equip.,* 980 F.2d 110 (2d Cir.1992) (stating in *dictum* that a district court could exercise jurisdiction supplemental to its bankruptcy jurisdiction). These courts have concluded that § 1367's grant of supplemental jurisdiction to a district court, of which the bankruptcy court is a unit, justifies a bankruptcy court's exercise of supplemental jurisdiction.

Notwithstanding this weight of authority, the Court is persuaded by the Fifth Circuit's decision in *Matter of Walker,* 51 F.3d 562 (5th Cir.1995), which rejected this reasoning and held that a bankruptcy court may not exercise supplemental jurisdiction.[4] *See also In re Remington Development Group, Inc.,* 180 B.R. 365 (Bankr.D.R.I.1995). *Cf. Chapman, III v. Currie Motors, Inc.,* 65 F.3d 78, 81 (7th Cir.1995) ("[T]here is a serious question whether 28 U.S.C. § 1367 is applicable to bankruptcy cases.") (citing *Matter of Walker* ). The Fifth Circuit first noted that § 1367 addressed the power of a district court to exercise supplemental jurisdiction, and was silent on the question of a bankruptcy court's authority in this area. Although bankruptcy courts are units of the district court, *Walker* 's analysis of the relevant bankruptcy jurisdiction provisions describes the problems with equation of bankruptcy courts and district courts in this context.[5] The court observed that the conferral of jurisdiction over matters that are "related to" and "arising in" [6] a bankruptcy proceed-

---

**4.** Although the Third Circuit has not addressed this issue, at least one bankruptcy judge in this district has held that a bankruptcy court may exercise supplemental jurisdiction. *See In re Braen,* 1991 WL 7701 (D.N.J.) (bankruptcy judge embraced *Direct Satellite* formulation for determining whether supplemental jurisdiction exists; upon review, Judge Wolin assumed, without deciding, that *Direct Satellite* test controlled).

**5.** 28 U.S.C. § 1334 grants bankruptcy jurisdiction to district courts: "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district court shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). There is some debate as to whether it is even constitutionally or statutorily permissible for a *district court* to exercise jurisdiction supplemen-

tal to its bankruptcy jurisdiction. *See Matter of Walker,* 51 F.3d at 570 ("[W]e do not address the difficult question of whether a *district court* may address claims that are supplemental to its bankruptcy jurisdiction.") (emphasis in original); Block–Lieb, 62 *Fordham L.Rev.* at 757–811. Like the Fifth Circuit, this Court does not address this issue.

**6.** 28 U.S.C. § 157(c)(1) provides: "A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."

ing "already allow[s] bankruptcy courts to hear, to the extent Congress intended, all supplemental claims that have a logical relationship to an underlying bankruptcy proceeding." *Matter of Walker*, 51 F.3d at 572 (quoting *In re Houghton*, 164 B.R. 146, 148 (Bankr.W.D.Wash.1994). Supplemental jurisdiction would disrupt the carefully calibrated jurisdictional grant Congress prescribed and allow bankruptcy courts to hear cases only tenuously connected to the central controversy—essentially, cases that are supplemental to cases "related to" or "arising in" the primary case. Like the Fifth Circuit, this Court considers it "unlikely that Congress would have intended such a result, especially after carefully delineating bankruptcy jurisdiction in § 157." *Id.* at 573. *See also* Susan Block–Lieb, 62 *Fordham L.Rev.* at 791–811. The Court holds that the bankruptcy court does not have jurisdiction over BNY's third-party claims against Nelson.

 Even though the bankruptcy court does not have jurisdiction over BNY's proposed Third–Party Complaint, this Court is not persuaded that cause exists to justify withdrawing the reference from the bankruptcy court. The Court is confident that New Jersey law would not bar a subsequent indemnification suit by BNY against Nelson even if it arises out of the same nucleus of operative fact as the action currently before the bankruptcy court. As explained in *Blazer Corp. v. New Jersey Sports and Exposition Auth.*, 199 N.J.Super. 107, 112, 488 A.2d 1025 (App.Div.1985), "[w]hen a federal court declines to exercise jurisdiction over state claims that must be asserted under the single controversy doctrine, the doctrine will not bar reassertion of those claims in a state court action." Indeed, a contrary result would be manifestly unfair and would offend the equitable principles upon which the doctrine is premised. *See Crispin v. Volkswagenwerk, A.G.*, 96 N.J. 336, 343, 476 A.2d 250 (1984) (The doctrine is "one of judicial fairness and will be invoked in that spirit.").

Moreover, resolution of Halvajian's action against BNY may obviate the need for further litigation between BNY and Nelson. Although not a third-party defendant to the action, Nelson will likely testify or otherwise assist BNY in the bank's defense. If BNY prevails, that resolution will moot BNY's claim against Nelson; if BNY loses, the bankruptcy proceeding will have crystallized the issues and defined the amount in controversy between Nelson and BNY, thereby minimizing the complexity and cost of any subsequent action between them. Thus, declining to withdraw the reference will impose minimal additional costs on the parties or judiciary.

Accordingly, **IT IS** on this 15th day of December, 1995, **ORDERED** that The Bank of New York's motion to withdraw the reference to the bankruptcy court is denied.

**IT IS FURTHER ORDERED** that The Bank of New York's motion to file an Amended Third–Party Complaint and Answer is denied.