In re ENRON CORP., et al.,
Reorganized Debtors.

Enron Corp., et al., Plaintiffs,

v.

Citigroup, Inc., et al., Defendants.

Barclays PLC, et al., Third–
Party Plaintiffs,

v.

Arthur Andersen LLP, Third–
Party Defendant.

Bankruptcy No. 01–16034(AJG).
Adversary No. 03–09266 A.

United States Bankruptcy Court,
S.D. New York.

Oct. 11, 2006.

Allen & Overy LLP, by Hugh M. McDonald, Esq., of Counsel, New York, NY, for Barclays PLC.

Curtis, Mallet–Prevost, Colt & Mosle LLP, by Eliot Lauer, Steven J. Reisman, Theresa A. Foudy, Esq., New York, NY, for Arthur Andersen LLP.

## OPINION CONCERNING THIRD–PARTY DEFENDANT ARTHUR ANDERSEN LLP'S MOTION TO DISMISS THIRD–PARTY COMPLAINT

ARTHUR J. GONZALEZ, Bankruptcy Judge.

This matter concerns the motion (the "Motion") filed on January 31, 2006 by third-party defendant Arthur Andersen LLP ("Andersen") to dismiss the third-party complaint (the "Third–Party Complaint") brought against it by Barclays PLC, Barclays Bank PLC, Barclays Capital Inc., Barclays Capital Securities Limited, Barclays Physical Trading Limited and Barclays Metals Limited (collectively "Barclays"). Andersen argues that this Court lacks subject matter jurisdiction to adjudicate the Third–Party Complaint and that, therefore, it is properly dismissed pursuant to Fed.R.Civ.P. 12(b)(1). Alternatively, Andersen moves to dismiss the Third–Party Complaint for failure to state a claim for relief pursuant to Fed.R.Civ.P. 12(b)(6) and for failure to plead fraud with particularity, pursuant to Fed.R.Civ.P. 9(b).

*Facts*

Commencing on December 2, 2001, and from time to time continuing thereafter, Enron Corp. and certain of its affiliated entities (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On July 15,

2004, the Court entered an Order confirming the Debtors' Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors (the "Plan") in these cases. The Plan became effective on November 17, 2004.

In September 2003, Enron Corp. and certain of its affiliated debtors (collectively, "Enron") commenced this adversary proceeding (the "Adversary Proceeding") by filing a complaint, subsequently amended several times (as amended, the "Complaint"), against Barclays and other banks and investment banks (collectively, the "Banks"). In the Complaint, Enron seeks the avoidance of preferential transfers and the equitable subordination of claims. In addition, the Complaint includes counts alleging that Barclays and other of the Banks (i) aided and abetted breach of fiduciary duty, (ii) aided and abetted fraud, and (iii) engaged in an unlawful civil conspiracy (collectively, the "Common Law Claims"). The Complaint alleges the existence of a scheme between the Banks and Enron's senior officers and managers (collectively, the "Enron Insiders") to manipulate and misstate Enron's financial condition. The Complaint further alleges that the Banks assisted in the alleged scheme by designing, implementing and, on certain occasions, financing structured transactions, even though the Banks were fully aware that the Enron Insiders were improperly recording the financial effects of these transactions. The mechanism through which the scheme was allegedly orchestrated was Enron's publicly filed financial statements.

In its answer to the Complaint, on October 28, 2005, Barclays brought the Third–Party Complaint against Andersen, asserting its right to contribution from Andersen in the event that Barclays is held liable to Enron on the Common Law Claims. Specifically, Barclays asserts that it is entitled to recover from Andersen contribution "pursuant to any and all applicable statutory and/or common law." In addition, Barclays sought apportionment of responsibility pursuant to Chapter 33 of the Texas Civil Practice and Remedies Code. Barclays asserts that it is entitled to contribution from Andersen because the instruments of the alleged fraud were Enron's publicly filed financial statements and Andersen, as auditor and advisor to Enron, knowingly played a role in any misrepresentations contained in Enron's financial statements. Barclays contends that Anderson advised Enron in the development and structuring of the allegedly improper transactions and that Andersen understood the financial effects of Enron's transactions, yet it audited and approved Enron's publicly filed financial statements.

Previously, Barclays filed in this Adversary Proceeding a Motion for Initial Determination under 28 U.S.C. § 157(b)(3)[1] that Certain Claims are Non–Core Claims (the "Barclays Motion"). In the Barclays Motion, Barclays argued that the Common Law Claims were non-core state common law claims. On June 22, 2006, a hearing was conducted before the Court at which oral argument was presented as to both the Barclays Motion and the Motion. On August 14, 2006, with respect to the Barclays Motion, the Court issued its Opinion Concerning Determination Pursuant to § 157(b)(3), in which the Court concluded that the Common Law Claims were core claims pursuant to § 157(b)(2)(B) and (C) and that the Court, thus, has jurisdiction over the Common Law Claims.

In the Motion, Andersen argues that the Third–Party Complaint should be dis-

---

**1.** 28 U.S.C. § 157(b)(3) provides in its relevant part that "[t]he bankruptcy judge shall determine whether a proceeding is a core proceeding."

missed because bankruptcy courts cannot exercise supplemental jurisdiction under 28 U.S.C. § 1367. Further, Andersen argues that even if the Court determines that a bankruptcy court has supplemental jurisdiction, this Court should abstain from exercising it. Alternatively, Andersen argues that the Third-Party Complaint should be dismissed for failure to state a claim.

In support of the Motion, Andersen argues that the Third–Party Complaint should be dismissed because it will have no impact on the bankruptcy estate in that non-debtor Barclays has brought the Third–Party Complaint for contribution against a non-debtor who has not filed a proof of claim or consented to the jurisdiction of this Court.

Barclays acknowledges that 28 U.S.C. § 1334 does not provide a basis for bankruptcy court jurisdiction of the Third–Party Complaint. Barclays, however, argues that 28 U.S.C. § 1367 provides an alternate basis for jurisdiction in the form of supplemental jurisdiction.

Andersen counters that the limited jurisdiction afforded bankruptcy courts under 28 U.S.C. § 1334 cannot be extended through the application of supplemental jurisdiction.

### Discussion

■ 28 U.S.C. § 1367(a) provides:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

■ The section allows a district court that has original jurisdiction over some claims in an action to exercise supplemental jurisdiction over additional claims that are part of the same case or controversy. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 125 S.Ct. 2611, 2617, 162 L.Ed.2d 502 (2005). It is a broad jurisdictional grant subject, by its terms, to certain specific exceptions as set forth "in subsections (b) and (c) or as expressly provided otherwise by federal statute." *Exxon Mobil Corp.*, 125 S.Ct. at 2621. Section 1367 codifies the principles of pendent and ancillary jurisdiction. *Chicago v. International College of Surgeons, et al.*, 522 U.S. 156, 165, 118 S.Ct. 523, 530, 139 L.Ed.2d 525, 535 (1997).

■ Pendent jurisdiction allows a district court adjudicating a federal question to enlarge the litigation to include related state-law claims. *Exxon Mobil Corp.*, 125 S.Ct. at 2632 (Ginsburg, J., dissenting). To exercise pendent jurisdiction, it must first be established that the federal claim is sufficiently substantial to confer subject matter jurisdiction upon a district court. *Exxon Mobil Corp.*, 545 U.S. 546, 125 S.Ct. at 2617. Once that threshold is met, pendent jurisdiction allows that court to adjudicate, in one judicial proceeding, state claims along with the federal claims between the same parties if the state and federal claims derive from a common nucleus of operative fact and the claims are of a nature such that the parties ordinarily would be expected to try them in one judicial proceeding. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The federal court has judicial power to hear the state claim because its relationship to the federal claim that confers jurisdiction is such that the entire action before

the court comprises but one constitutional "case." *Id.* While a federal court is authorized to exercise supplemental jurisdiction, it is not obligated to exercise it. *Exxon Mobil Corp.*, 125 S.Ct. at 2617. Rather, pendent jurisdiction is a doctrine of discretion. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. In exercising its discretion, a court considers the rationale for applying the principle which includes judicial economy, convenience and fairness to litigants. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

■■■ Ancillary jurisdiction concerns instances where a party other than the original plaintiff interposes state claims into a proceeding such as counterclaims, cross-claims, or third-party claims. *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 810 (2d Cir.1979). Thus, ancillary jurisdiction applies to the claim of a defendant who impleads a third party to seek contribution because the third-party claim has a "logical dependence" on the primary lawsuit. *In re Joint Eastern & Southern Dist. Asbestos Litigation*, 769 F.Supp. 85, 86 (S.D.N.Y.1991). The third-party complaint depends at least in part upon the resolution of the primary lawsuit. *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274, 283 (1978). Ordinarily, ancillary jurisdiction involves claims by a defending party brought to court against his will, or by another person whose might lose rights, or be adversely affected, if not afforded the opportunity to address those issues in an ongoing action in a federal court. *Kroger*, 437 U.S. at 376, 98 S.Ct. at

2404. Further, ancillary jurisdiction is invoked to avoid piecemeal litigation. *Federman*, 597 F.2d at 810. Thus, after a court has acquired jurisdiction of a case or controversy, it can adjudicate matters incidental to the main claim that it otherwise could not have adjudicated independently. *Id.*

Prior to their codification, the doctrines of pendent and ancillary jurisdiction had developed separately; nevertheless, they were recognized as "two species of the same generic problem." *Kroger*, 437 U.S. at 370, 98 S.Ct. at 2401. Moreover, section 1367(a) does not recognize any distinction between the two doctrines. *Exxon Mobil Corp.*, 125 S.Ct. at 2621. Further, the statute confirms the discretionary nature of a court's authority to exercise supplemental jurisdiction by delineating in subsection 1367(c)[2] factors to be considered by a court at every stage of the litigation in determining whether to exercise supplemental jurisdiction, which factors incorporate the values of judicial economy, convenience, fairness, and comity. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173, 118 S.Ct. 523, 534, 139 L.Ed.2d 525 (1997); 28 U.S.C. § 1367(c).

■■■ In determining whether a federal court has jurisdiction over a controversy, the limits imposed by both the Constitution and statutory law must be considered. *Kroger*, 437 U.S. at 372, 98 S.Ct. at 2401–02; *see also Exxon Mobil Corp.*, 125 S.Ct. at 2621 (noting that "[o]nce the court determines that it has original jurisdiction

---

**2.** 28 U.S.C. 1367(c) provides:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

over the civil action, it can turn to the question whether it has a constitutional and statutory basis for exercising supplemental jurisdiction over the other claims in the action"). In addition to the constitutional minimum of determining whether the federal and non-federal claims stem from a common nucleus of operative fact,

> there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether "Congress in [that statute] has ⋯ expressly or by implication negated" the exercise of jurisdiction over the particular nonfederal claim.

*Kroger,* 437 U.S. at 373, 98 S.Ct. at 2402 (citation omitted). *See also Exxon Mobil Corp.,* 125 S.Ct. at 2621, 2617 (noting that "federal courts have no jurisdiction without statutory authorization"). Thus, to determine the extent to which supplemental jurisdiction is authorized, the text of section 1367 must be examined "in light of context, structure, and related statutory provisions." *Exxon Mobil Corp.,* 125 S.Ct. at 2620.

In the context of bankruptcy jurisdiction, the relevant statutes that must be considered are 28 U.S.C. § 1334 and 28 U.S.C. § 157. The statute that confers original bankruptcy jurisdiction on the district courts is 28 U.S.C. § 1334, which provides, in relevant part, that

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under

title 11, or arising in or related to cases under title 11.

▉ Thus, pursuant to 28 U.S.C. § 1334, the district courts have original jurisdiction of "all cases under title 11" and of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." A case under title 11 is a reference to "the bankruptcy petition itself." *Wood v. Wood (In re Wood),* 825 F.2d 90, 92 (5th Cir.1987). There is "arising under" jurisdiction where one invokes a substantive right created by federal bankruptcy law. *McCarthy v. Radcliffe (In re Radcliffe),* 317 B.R. 581, 589 (Bankr.D.Conn.2004). A proceeding is considered "arising in" a bankruptcy case where, even though it is not based on a right expressly created by title 11, it would have no existence outside of bankruptcy. *Id.* An action is "related to" a bankruptcy case if its outcome "in any way impacts upon the handling and administration of the bankrupt estate." *In re Boco Enterprises, Inc.,* 204 B.R. 407, 410 (Bankr. S.D.N.Y.1997) (citing, *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)).

The district courts have authority to reference bankruptcy related matters to the bankruptcy courts pursuant to 28 U.S.C. § 157, which provides, in relevant part, that

> (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

In this district, the reference authorized by section 157(a) was effectuated pursuant to an order, dated July 10, 1984, issued by Acting Chief District Court Judge Robert J. Ward. *Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re*

*Masterwear Corp.)*, 241 B.R. 511, 517 n. 6 (Bankr.S.D.N.Y.1999).

The current renditions of the bankruptcy jurisdictional provisions result from the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Amendments"). The purpose of the 1984 Amendments was to respond "to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which found unconstitutional the 1978 Bankruptcy Reform Act's broad delegation of Article III powers to the Article I Bankruptcy Court." *Pied Piper Casuals, Inc. v. Insurance Co. of the State of Pennsylvania*, 72 B.R. 156, 158 (S.D.N.Y. 1987). The unconstitutional aspect was the authority given to a bankruptcy court "to finally adjudicate claims or causes of action based on state or common law." [3] *Id.* The 1984 Amendments addressed this concern by making a distinction between proceedings that were "core" and those that are considered "noncore." *Id.* Consequently, pursuant to 28 U.S.C. § 157, a bankruptcy court was given authority to hear and determine "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11" that were referred to it by the district court and "to enter appropriate orders and judgments, subject to [appellate review by the district court]." 28 U.S.C. § 157(b)(1). Thus, a bankruptcy court has authority to make a final determination in all cases and all "core" proceedings, which include proceedings "arising under" or "arising in" a case under title 11. However, with respect to "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," a bankruptcy court is only given authority to "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).[4]

Barclays concedes that it is not invoking "arising under," "arising in," or "related to" jurisdiction, pursuant to 28 U.S.C. § 1334(b), as the basis to support the Third–Party Complaint. Rather, Barclays maintains that supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), supports the Third–Party Complaint.

Andersen contends that the authorization of referral to the bankruptcy courts under 28 U.S.C. § 157(a) is limited to matters within the district court's bankruptcy jurisdiction, i.e., "any and all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." Thus, Andersen contends that section 157 does not permit the reference of any claims that

---

**3.** The *Marathon* Court noted the distinction between controversies involving public rights and as those involving private rights, and that only the former could be removed from Article III courts. *Marathon*, 458 U.S. at 69–70, 102 S.Ct. at 2870–71. While the restructuring of debtor-creditor relationships may be considered a public right as it is "at the core of the federal bankruptcy power," the adjudication of state-created rights are private rights that must be adjudicated by an Article III court. *Id.*, 458 U.S. at 71, 102 S.Ct. at 2871.

**4.** The *Marathon* court was concerned with the unconstitutional broad grant of jurisdiction given to non-Article III bankruptcy courts over proceedings related to bankruptcy cases. *Goldberg Holding Corp. v. NEP Productions, Inc.*, 93 B.R. 33, 34 (S.D.N.Y.1988). Thus, 28 U.S.C. § 157(c)(1), pursuant to which a district court judge enters a final order after considering the bankruptcy judge's proposed findings of fact and conclusion of law and reviews *de novo* matters to which any party objects, was intended to address this concern.

may be in district court based upon supplemental jurisdiction.

The Court agrees with Andersen's interpretation of 28 U.S.C. § 157. As previously noted, there must be a constitutional and statutory basis for a court to exercise jurisdiction. In bankruptcy matters, 28 U.S.C. § 1334 is the statutory basis that confers original jurisdiction on district courts. 28 U.S.C. § 1334(a) confers original jurisdiction on district courts of "all cases under title 11" and 28 U.S.C. § 1334(b) confers original jurisdiction on district courts of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Further, 28 U.S.C. § 157 authorizes the district court to refer certain matters to bankruptcy courts. Pursuant to section 157, a district court may refer "any or all cases under title 11" and "any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges.

With minor exceptions,[5] the language of section 157 tracks the language of section 1334(a) & (b) and, therefore, only authorizes the reference of cases and of proceedings within the district court's "arising under," "arising in," and "related to" jurisdiction. Thus, even if the district court has original jurisdiction over the section 1334 bankruptcy claims and has

section 1367 supplemental jurisdiction over the Third–Party Complaint, there is no statutory basis authorizing the reference of any matters over which the district court may have supplemental jurisdiction. *See In re Masterwear Corp.*, 241 B.R. at 517 n. 6 (noting that section 157(a) would not authorize a district court to refer any supplemental jurisdiction that might inhere to its original bankruptcy jurisdiction). Inasmuch as 28 U.S.C. § 157 tracks the language of 28 U.S.C. § 1334(a) & (b) and only permits district courts to refer to bankruptcy courts cases and proceedings that fall within the district court's "arising in," "arising under," or "related to" jurisdiction, bankruptcy courts cannot exercise supplemental jurisdiction under 28 U.S.C. § 1367. This view is further supported by the fact that while section 157 expressly sets forth, in subsection (b)(1), the extent of a bankruptcy court's authority upon hearing a case or core proceeding,[6] as well as providing similar direction, in subsection (c)(1), with respect to a proceeding that is not core but otherwise related to a bankruptcy case,[7] there is no such instruction concerning a proceeding that is both not core and not related to a bankruptcy case. *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 573 (5th Cir.1995) (noting that

---

**5.** 28 U.S.C. § 1334 refers to the district court having original jurisdiction of "all" cases and of "all" civil proceedings arising under title 11, or arising in or related to cases under title 11, while 28 U.S.C. § 157 adds the term "any or" prior to "all," in recognition of the fact that the district court may refrain from referring all cases or proceedings to the bankruptcy court and may determine to retain and preside over certain cases and proceedings. One further distinction is that section 1334 uses the modifier "civil" to characterize the types of proceedings within its jurisdiction. As a result, the only proceedings under section 1334 that a district court has jurisdiction over and can refer are civil proceedings,

thereby dispensing with the need of specifying that the referral must be of civil proceedings.

**6.** Pursuant to 28 U.S.C. § 157(b)(1), the bankruptcy judge has authority to hear and determine cases and core proceedings and to enter appropriate orders and judgments. *Celotex Corp. v. Edwards*, 514 U.S. 300, 321, 115 S.Ct. 1493, 1505, 131 L.Ed.2d 403, 418–19 (1995).

**7.** *See Celotex*, 514 U.S. at 321–22, 115 S.Ct. at 1505 (noting that for proceedings "related to" cases under title 11, pursuant to 28 U.S.C. § 157(c)(1), only the district court has authority to enter any final order or judgment).

absent from the jurisdictional grant to the bankruptcy court under section 157 is an indication that a district court may refer to a bankruptcy court what is before it only on the basis of supplemental jurisdiction).

Nevertheless, the section 157 referral to the bankruptcy court might be considered to encompass any supplemental jurisdiction that could be exercised by the district court if the term "proceeding" is considered synonymous with "action." This is because the Supreme Court has concluded that as long as a district court has original jurisdiction "over a subset of the claims constituting the action," it has original jurisdiction of the civil action. *Exxon Mobil,* 125 S.Ct. at 2622, (deciding the matter in the context of exercising supplemental jurisdiction in cases based upon diversity jurisdiction); *Int'l College of Surgeons,* 522 U.S. 156, 118 S.Ct. 523, 139 L.Ed.2d 525 (considering issues concerning removal actions). Even if this were the case, however, as previously noted, once a court determines that it has original jurisdiction over the civil action, it must determine whether there is a constitutional and statutory basis to exercise supplemental jurisdiction over the other claims in the action. *Exxon Mobil Corp.,* 125 S.Ct. at 2621. Further, the court must examine the jurisdiction-conferring statute to determine if the intent was, either expressly or by implication, to negate the exercise of jurisdiction over the particular nonfederal claim. *Kroger,* 437 U.S. at 373, 98 S.Ct. at 2402.

■■■■ A bankruptcy court's jurisdiction "is grounded in and limited by statute." *Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403, 410 (1995); 28 U.S.C. § 1334 and 28 U.S.C. § 157. "Congress has gone to great lengths to determine what proceedings may be tried by bankruptcy courts," and has set forth the parameters of bank-

ruptcy jurisdiction in 28 U.S.C. § 1334 and 28 U.S.C. § 157. *Walker,* 51 F.3d. at 573. Under this jurisdictional grant, the outer reaches of a bankruptcy court's subject matter jurisdiction are the "related to" jurisdiction. *19 Court St. Assocs. v. Resolution Trust Corp. (In re 19 Court St. Assocs.),* 190 B.R. 983, 995–96 (Bankr. S.D.N.Y.1996). While the comprehensive grant of jurisdiction to the bankruptcy court, by the inclusion of the "related to" language, was meant to allow that court to "deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984), *citing,* H.Rep. No. 598, 95th Cong., 2d Sess., 43–48, *reprinted in* 1978 U.S.C.A.A.N. 5963, 6004–08, there were limitations to this jurisdictional grant. *Celotex,* 514 U.S. at 308, 115 S.Ct. at 1499. As previously noted, a civil proceeding is related to the bankruptcy case if it could "conceivably have any effect" on the bankruptcy estate. *Pacor,* 743 F.2d at 994. "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.* It is not sufficient, however, that the putative "related to" proceeding and a controversy involving the bankruptcy estate have common issues of fact to confer subject matter jurisdiction. *Id.* "Judicial economy itself does not justify federal jurisdiction." *Id.*

■■■■ To come within the scope of "related to" jurisdiction, the litigation must have a "significant connection" with the bankruptcy. *19 Court St. Assocs.,* 190 B.R. at 996 (citing, *In re Turner,* 724 F.2d 338, 340–41 (2d Cir.1983)). Jurisdiction is not present where the "related" controversy is too tangential to the bankruptcy case. *Turner,* 724 F.2d at 341. The court must

anticipate whether the resolution of the dispute could conceivably effect the estate's administration. *19 Court St. Assocs.*, 190 B.R. at 996. "[R]elatedness does not lie where the dispute, while 'conceivably' related to the bankruptcy estate, is so only remotely." *In re Holland Industries, Inc.*, 103 B.R. 461, 468 (Bankr. S.D.N.Y.1989).

Thus, the jurisdictional grant in 28 U.S.C. § 1334(b) and 28 U.S.C. § 157, by implication, negates a bankruptcy court's exercise of jurisdiction of a supplemental non-federal claim in instances where that claim has no impact on the bankruptcy estate. The carefully crafted conferral of jurisdiction under 28 U.S.C. § 1334 and 28 U.S.C. § 157 would be undermined if bankruptcy courts were authorized to exercise supplemental jurisdiction. *Walker*, 51 F.3d at 573. As noted by the *Walker* court,

> it would be somewhat incongruous to gut this careful system by allowing bankruptcy courts to exercise supplemental jurisdiction to pull into bankruptcy courts matters Congress excluded in its specific jurisdictional grants. (citations omitted).

*Walker*, 51 F.3d at 573. Thus, consistent with the limited jurisdiction contemplated for bankruptcy courts, 28 U.S.C. § 157 was drafted in a way that would only refer matters to the bankruptcy court that were within the district court's original jurisdiction pursuant to 28 U.S.C. § 1334, thereby precluding a bankruptcy court from acquiring authorization to exercise supplemental jurisdiction even if a district court has any such authority.

Barclays argues that the Second Circuit already determined in *Klein v. Civale & Trovato, Inc. (In re Lionel Corp.)*, 29 F.3d 88, 92 (2d Cir.1994), that bankruptcy courts can exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).[8] In *Lionel*, the owners of property and the debtor-tenant brought an action to declare a mechanic's lien filed by a contractor invalid. *Id.* at 90. The Second Circuit concluded that the owners' suit against the debtor was a core proceeding that the bankruptcy court had jurisdiction to determine and, in addition, that the bankruptcy court had jurisdiction over the owners' claim against the contractor "under principles of supplemental jurisdiction. *See* 28 U.S.C. § 1367." *Id.* at 92. The reference to section 1367 was not a reference to the direct application of supplemental jurisdiction under section 1367. Rather it was a reference to "principles" of supplemental jurisdiction. Had a direct application of section 1367 been intended, that purpose could have been conveyed by asserting that the bankruptcy court had jurisdiction "under section 1367."[9] The Second Circuit's ruling recognizes that "principles" of

---

8. The Ninth Circuit has also applied 28 U.S.C. § 1367 supplemental jurisdiction to claims that are only tangentially related to a bankruptcy proceeding. *State of Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1195 (9th Cir.2005).

9. Arguably had the court stated "under 'the' principles of section 1367" a stronger case could be made that the court found that the bankruptcy court *has* supplemental jurisdiction under section 1367, but even that language begs the question. If the court intended to find that section 1367 applied to the bankruptcy court jurisdiction, it would have used the term "under" or "pursuant to" section 1367. It would not have used a phrase that invokes an analogy instead of an application of the referenced statute. Moreover, the Second Circuit used the introductory signal "See" prior to its citation to the statute, which further indicates that it was not directly applying the statute. Rather, the "See" introductory signal indicates that the cited authority supports the proposition though it is not stated directly by the authority, i.e., that the proposition clearly follows from the cited authority.

supplemental jurisdiction are incorporated into the framework of the section 1334 analysis. Thus, the supplemental jurisdiction analysis is subsumed within 28 U.S.C. § 1334, which sets forth the outer reaches of the degree of "relatedness" that falls within the bankruptcy court's jurisdiction. *See Walker*, 51 F.3d at 572 (noting that the components of § 1334(b) concerning "related to" and "arising in" jurisdiction "already allow bankruptcy courts to hear, to the extent Congress intended, all supplemental claims that have a logical relationship to an underlying bankruptcy proceeding").

Moreover, in *Lionel*, the bankruptcy court had jurisdiction over the owners' claim against the contractor because it was premised on a violation of the automatic stay. Therefore, the bankruptcy court had "arising under" jurisdiction, pursuant to 28 U.S.C. § 1334(b), over the claim as a core claim that concerned a right under a substantive section of the Bankruptcy Code. *Id.* As the bankruptcy court in that proceeding had "arising under" jurisdiction over the matter, it was not necessary for the Court to address the issue of whether there was supplemental jurisdiction under 28 U.S.C. § 1367.[10] Furthermore, the Second Circuit was not presented with the issue here concerning 28 U.S.C. § 157 or the statutory basis for conferral of jurisdiction on the bankruptcy court.

Finally, the Court notes that it is not accurate to describe the reach of supplemental jurisdiction under section 1367 as

necessarily greater than the reach of "related to" jurisdiction under section 1334. Each section applies certain criteria—section 1334 uses the "relatedness" standard and section 1367 uses the "common nucleus of operative facts" of pendent jurisdiction and "logical dependance" of ancillary jurisdiction. The application of any of these criteria involves the principles of extending jurisdiction over matters that would not have arisen under a particular jurisdictional statute. However, because of the particular standards applied under the statutes, each may reach matters that the other would not. In the instant matter, the same operative facts are involved, but because there is no impact on the estate, there is no related to jurisdiction. However, the reach of "related to" jurisdiction under section 1334, which is limited by its "impact on the estate" but not by the criteria of common operative facts or logical dependence, may reach matters far beyond that of section 1367.[11]

### *Conclusion*

28 U.S.C. § 157 only authorizes district courts to refer to bankruptcy courts cases and proceedings that fall within the district court's "arising in," "arising under," or "related to" jurisdiction pursuant to 28 U.S.C. § 1334. As such, there is no statutory basis for bankruptcy courts to exercise supplemental jurisdiction under 28 U.S.C. § 1367. Therefore, the bankruptcy court does not have jurisdiction over the

---

10. As in *Lionel*, certain proceedings are considered to "arise under" the Bankruptcy Code based upon the broad reach of the section 362 automatic stay. Thus, but for the operation of the automatic stay, such proceedings likely would be merely related to the bankruptcy case.

11. It has often been the case that bankruptcy courts do not reach the issue of whether they have supplemental jurisdiction because they

find that, even if they have such jurisdiction, abstention is warranted under the circumstances. However, because of the common nucleus of operative facts and the relationship of the parties present in this case, the Court likely would not have abstained had it found that it had supplemental jurisdiction. Aside from this observation, the Court does not address Andersen's alternate bases to dismiss the Third–Party Complaint.

Third–Party Complaint and it is properly dismissed.

Counsel for Andersen is to settle an order consistent with this Opinion.